IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY A. BORMAN, on behalf of plaintiff and a class, | ) ) ) Case No. 08C2816 |
| Plaintiff, | ) ) Hon. Ruben Castillo |
| v. | ) ) Magistrate Judge Cole |
| MIDLAND FUNDING LLC, MIDLAND CREDIT MANAGEMENT, INC.; ENCORE CAPITAL GROUP, INC., | ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS MIDLAND FUNDING, LLC, MIDLAND CREDIT AND ENCORE CAPITAL GROUP, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT-CLASS ACTION**

Defendants, Midland Funding, LLC ("Midland Funding"), Midland Credit Management, Inc. ("MCM"), and Encore Capital Group, Inc.("Encore") (also collectively referred to as "Defendants"), by and through their undersigned counsel, for their Answer and Affirmative Defenses to Plaintiff's Complaint-Class Action, state as follows:

**MATTERS COMMON TO MULTIPLE CLAIMS**

**INTRODUCTION**

1.    Plaintiff Kimberly A. Borman brings this action to secure redress against unlawful collection practices engaged in by defendants Midland Funding LLC ("MFLLC"), Midland Credit Management, Inc. ("MCM"); and Encore Capital Group, Inc., formerly known as MCM Capital Group, Inc. ("Encore").  Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and state law.

**RESPONSE:  Defendants admit that Plaintiff Kimberly A. Borman ("Plaintiff") has made allegations in her Complaint (the "Complaint") relating to the FDCPA and state law, but deny any and all liability to Plaintiff.  In addition, Defendants Midland Funding and**

1

Encore deny that they are debt collectors, or that they engaged in any debt collection activity with respect to the Plaintiff.

2.      There is a substantial problem with debt buyers suing on debts that they do not own and have no right to sue on.

**RESPONSE:   The allegation of Paragraph 2 set forth conclusions of law to which no response is required.   To the extent that a response is deemed required, Defendants deny that they sued Plaintiff on debts that they did not own or have a right to sue on.**

3.      There are multiple reported cases in which debtors have been subjected to litigation because they "settled" with A and then B claimed to own the debt.  Smith v. Mallick, 514 F.3d 48 (D.C. Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer [possibly fraudulently] settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result).  See also, Miller v. Wolpoff & Abramson, LLP, 1:06-CV-207-TS, 2008 U.S. Dist. LEXIS 12283 (N.D.Ill. 2000), where the debtor claimed he had been sued twice on the same debt; Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 923 (N.D. Ill. 2000), where the debtor claimed he settled with one agency and was then dunned by a second for the same debt, and Northwest Diversified, Inc. v. Desai, 353 Ill.App3d 378, 818, N.E.2d 753 (1st Dist. 2004), where a commercial debtor paid the creditor only to be subjected to a levy by a purported debt buyer.

**RESPONSE:   The allegations of paragraph 3 set forth conclusions of law to which no response is required.   To the extent that a response is deemed required, Defendants state that the cases cited speak for themselves.**

4.      In Wood v. M&J Recovery LLC,. CV 05-5564, 2007 U.S. Dist. LEXIS 24157 (E.D.N.Y., April 2, 2007), a debtor complained of multiple collection efforts by various debt buyers and collectors on the same debt, and the defendants asserted claims against one another disputing the ownership of the portfolio involved.  Shekinah alleged that it sold a portfolio to NLRS, that NLRS was unable to pay that the sale agreement was modified so that NLRS would only obtain 1/5 of the portfolio, and that the 1/5 did not include the plaintiff's debt.  Portfolio claimed that it and not Shekinah is the rightful owner of the portfolio.

**RESPONSE:   The allegations of paragraph 4 set forth conclusions of law to which no response is required.   To the extent that a response is deemed required, Defendants state that the case cited speaks for itself.**

5.      In Associates Financial Services Co. v. Bowman, Heintz, Boscia & Vician, P.C., IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, *9-12 (S.C.Ind., April 25, 2001), later opinion,

2004 U.S. Dist. LEXIS 6520 (S.D. Ind., Mar. 31, 2004), allegations were made that a creditor had continued to collect accounts allegedly sold to a debt buyer.

**RESPONSE:   The allegations of paragraph 5 set forth conclusions of law to which no**

**response is required.   To the extent that a response is deemed required, Defendants state**

**that the case cited speaks for itself.**

6.      Courts have also dismissed numerous collection and foreclosure lawsuits filed in the names of entities that did not own the purported debts.  In re Foreclosure Cases, 1:07CV2282 and 14 others, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio Oct. 31, 2007); In re Foreclosure Cases, 07-cv-166 and 18 others, 2007 U.S. Dist. LEXIS 90812 (S.D. Ohio Nov. 27, 2007); In re Foreclosure Cases, 521 F. Supp. 2d 650 (S.D. Ohio, 2007); In re Foreclosure Cases, 07-cv-166 and 14 others, 2007 U.S. Dist. LEXIS 95673 (S.D. Ohio, Dec. 27, 2007); NovaStar Mortgage, Inc. v. Riley, 3:07-CV-397, 2007 U.S. Dist. LEXIS 86216 (S.D. Ohio, Nov. 21, 2007); NovaStar Mortgage, inc. v. Grooms, 3:07-CV-395, 2007 U.S. Dist. LEXIS 86214 (S.D.Ohio., Nov. 21, 2007); HSBC Bank USA v. Rayford, 3:07-CV-428, 2007 U.S. Dist. LEXIS 86215 (S.D. Ohio., Nov. 21, 2007); Everhome Mtge. Co. v. Rowland, 2008 Ohio 1282; 2008 Ohio App. LEXIS 1103 (Ohio App. March 20, 2008) (Judgment for plaintiff reversed because it failed to introduce assignment or establish that it was the holder of the note and mortgage); Deutsch Bank National Trust Co. v. Castellanos, 277/07, 2008 NY Slip Op 50033U; 18 Misc. 3d 1115A; 2008 N.S. Misc. LEXIS 44; 239 N.Y.L.J. 16 (Kings Co., N.Y., Sup. Ct., Jan. 14, 2008); HSBC Bank USA, N.A. v. Valentin, 15968/07, 2008 NY Slip Op 50164U; 14 Misc. 3d 1123A; 2008 N.Y. Misc. LEXIS 229 (Kings Co., N.Y. Sup. Ct., Dec. 17, 2007); Deutsch Bank National Trust Co. v. Castellanos, 15 Misc. 3d 1134A; 841 N.Y. Sd 819 (Kings. Co., N.Y. Sup. Ct. 2007).

**RESPONSE:   The allegations of paragraph 6 set forth conclusions of law to which no**

**response is required.   To the extent that a response is deemed required, Defendants state**

**that the cases cited speak for themselves.**

7.      Debt buyer American Acceptance has a lawsuit pending alleging that a broker of charged-off debts sold it debts to which it did not have title.  American Acceptance Co. v. Goldberg  2:08cv9 (N.D.Ind.).  Another debt buyer, Hudson & Keyse, filed suit alleging that the same debt broker obtained information about consumer debts owned by Hudson & Keyse and used the information to try to collect the debts for its own account, even though it didn't own them.  Hudson & Keyse, LLC v. Goldberg & Associates, LLC 07-81047-civ (S.D.Fla., filed Nov. 5, 2007).  A similar suit, alleging that the broker resold accounts it did not own, was filed by Old National Bank, Old National Bank v. Goldberg & Associates,  9:08-cv-80078-DMM (S.D. Fla., Jan. 24, 2008).  The same debt broker is accused in another complaint of selling 6,521 accounts totaling about $40 million face value which it did not own.  RMB Holdings, LLC v. Goldberg & Associates, LLC, 3:07-cv-00406 (E.D. Tenn., filed Oct. 29, 2007).   Other debt buyers have voiced similar complaints.  "Florida Broker Faces Multiple Lawsuits," Collections & Credit Risk, April 2008, p.8.

**RESPONSE:** The allegations of paragraph 7 set forth conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants state that the cases cited speak for themselves.

8.      In a related abuse, debt buyers would "purchase" debts with minimal information about the debtor and then try to "collect" them from anyone with a similar name. In 2004, the Federal Trade Commission shut down a debt buyer called CAMCO headquartered in Illinois. The following is from a press release issued by the FTC in connection with that case.

> . . . In papers filed with the court, the agency charged that as much as 80 percent of the money CAMCO collects comes from consumers who never owed the original debt in the first place. Many consumers pay the money to get CAMCO to stop threatening and harassing them, their families, their friends, and their co-workers.

> According to the FTC, CAMCO buys old debt lists that frequently contain no documentation about the original debt and in many cases no Social Security Number for the original debtor. CAMCO makes efforts to find people with the same name in the same geographic area and tries to collect the debt from them – whether or not they are the actual debtor. In papers filed with the court, the FTC alleges that CAMCO agents told consumers – even consumers who never owed the money – that they were legally obligated to pay. They told consumers that if they did not pay, CAMCO could have them arrested and jailed, seize their property, garnish their wages, and ruin their credit. All of those threats were false, according to the FTC. . . . (http://www.ftc.gov/opa/2004/12/camco.htm)

**RESPONSE:** The allegations of paragraph 8 set forth conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants lack information or knowledge sufficient to form a belief as to the truth of this allegation.

9.      In order to protect Illinois residents against this sort of abuse, the Illinois Collection Agency Act ("ICAA") was amended effective January 1, 2008 to define debt buyers as "collection agencies". This makes applicable the special assignment requirements in ICAA § 8b, 225 ILCS 425/8b. Illinois courts had held prior to the amendment that a party that was required to but did not have such an assignment does not have a valid claim and that the defendant in such a case is entitled to judgment. Business Service Bureau, Inc. v. Webster, 298 Ill. App. 3d 257; 698 N.E.2d 702 (4th Dist. 1998).

**RESPONSE:** The allegations of paragraph 9 set forth conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants state that the Illinois Collection Agency Act and the case cited speak for themselves.

10.     Section 8b of the ICAA provides:

**Sec. 8b.  An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided:**

> **(a)  The assignment is manifested by a written agreement, separate from and in addition to any document intended for the purpose of listing a debt with a collection agency.   The document manifesting the assignment shall specifically state and include:**
>
> > **(i) the effective date of the assignment; and**
> >
> > **(ii) the consideration for the assignment.**
>
> **(b)  The consideration for the assignment may be paid or given either before or after the effective date of the assignment.   The consideration may be contingent upon the settlement or outcome of litigation and if the claim being assigned has been listed with the collection agency as an account for collection, the consideration for assignment may be the same as the fee for collection.**
>
> **(c)   All assignments shall be voluntary and properly executed and acknowledged by the corporate authority or individual transferring title to the collection agency before any action can be taken in the name of the collection agency.**
>
> **(d)  No assignment shall be required by any agreement to list a debt with a collection agency as an account for collection.**
>
> **(e)  No litigation shall commence in the name of the licensee as plaintiff unless: (i) there is an assignment of the account that satisfies the requirements of this Section and (ii) the licensee is represented by a licensed attorney at law. . . .**

**RESPONSE:**  **The allegations of paragraph 10 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants state that the Illinois Collection Agency Act speaks for itself.**

11.     Furthermore, the assignment must be attached to the complaint.  Candice Co. v. Ricketts, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996).

**RESPONSE:  The allegations of paragraph 11 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants state that the case cited speaks for itself.**

12.     Finally, the assignee is required "in his or her pleading on oath alleged that he or she is the actual bona fide owner therefore, and set forth how and when he or she acquired title. . . ." 735 ILCS 5/2-403(a).

**RESPONSE:  The allegations of paragraph 12 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants state that the statute cited speaks for itself.**

13.     Defendant Midland Funding LLC, a debt buyer regulated by the ICAA since January 1, 2008, systematically files collection lawsuits without compliance with ICAA § 8b and, therefore, without valid claims.

**RESPONSE:  The allegations of paragraph 13 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 13.**

14.     Defendant Midland Credit Management, Inc. ("MCM") directs the filing of these lawsuits, and defendant Encore devised the "collection strategy" of buying debts so cheaply that the requisite documentation is not available and having its subsidiaries MCM and Midland Funding LLC file suit on them anyway.

**RESPONSE:  Denied.**

15.     In this action, plaintiff complains that such practice violates both the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e and 1692f, and ICAA § 9.

**RESPONSE:  The allegations of paragraph 15 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 15.**

## VENUE AND JURISDICTION

16.     This Court has jurisdiction under 15 U.S.C. § 1692k (FDCPA), 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 28 U.S.C. § 1367.

**RESPONSE:  Defendants admit only that this Court has jurisdiction over the allegations in Plaintiff's Complaint and otherwise state that the jurisdictional statutes cited speak for themselves.**

17.    Venue and personal jurisdiction in this District are proper because:

a.    Defendants' collection communications and activities impacted plaintiff within this District;

b.    Defendants do business or is located within this District.

**RESPONSE:  Denied as stated.  Further answering, Defendants Midland Funding and Encore deny that they are debt collectors, or that they engaged in any debt collection activity with respect to Plaintiff.**

## PARTIES

18.    Plaintiff Kimberly Borman is an individual who resides in the Northern District of Illinois.

**RESPONSE:  Defendants lack information or knowledge sufficient to form a belief as to the truth of this allegation.**

### Midland Funding LLC

19.    Defendant Midland Funding LLC is a limited liability company chartered under Delaware law.  Its principal place of business is 8875 Aero Drive, Suite 200, San Diego, CA 92123.  It does business in Illinois.  Its registered agent is Illinois Corporation Service Co., 801 Adlai Stevenson Dr., Springfield, IL 67203.

**RESPONSE:  Defendants admit that Midland Funding, as of January 14, 2008, has a registered agent in Illinois at the noted address.  Defendants further admit that Midland Funding is a Delaware corporation with its principal place of business in San Diego, California.  Defendants deny that Midland Funding does business in Illinois.**

20.    Defendant Midland Funding LLC is in the business of taking title to charged-off debts allegedly owed by consumers, including large amounts of credit card debts, for a small fraction of face value and enforcing the debts against the consumers.

**RESPONSE:  Defendants admit that Midland Funding is in the business of purchasing and taking title to charged-off debts, but deny the remaining allegations contained in paragraph 20.**

21.    Defendant Midland Funding LLC has been the plaintiff in more than 1,000 collection actions against Illinois residents filed since January 1, 2008.

**RESPONSE:  Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations.**

22.    The debts on which defendant Midland Funding LLC files suit were purchased by Encore (described below) for an average of less than ten cents on the dollar.

**RESPONSE:  Denied.**

23.    The mails and telephone system are regularly used in connection with such lawsuits.

**RESPONSE:  Defendants deny that Midland Funding used the mails and telephone system in connection with its lawsuit against Plaintiff.**

24.    Because the purported obligations were originally owed to other entities and were charged off prior to purchase, Midland Funding LLC is a "debt collector" as defined in the FDCPA.

**RESPONSE:  Denied.**

### Midland Credit Management

25.    Defendant Midland Credit Management ("MCM") is a Kansas corporation with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, CA 92123.  MCM transacts business in Illinois.  Its registered agent and office are Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

**RESPONSE:  Defendants admit that MCM is a Kansas corporation with its principal offices in San Diego, California.  MCM denies that it does business in Illinois, except and exclusively through interstate commerce.  Further answering, Defendants deny that MCM has an office in Illinois.**

26.    Defendant MCM is a collection agency and collects the charged-off debts held in the names of Midland Funding LLC and other subsidiaries of Encore (described below).

**RESPONSE:  Defendants admit that MCM may be considered a debt collector under the FDCPA, for some purposes. Defendants deny that MCM is a "collection agency." Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that MCM acted as a debt collector with respect to Plaintiff, because they are without knowledge or information sufficient to form a belief as to the purpose of Plaintiff's debts.**

27.    Defendant MCM is a "debt collector" as defined in the FDCPA.

**RESPONSE:  Defendants admit that MCM may be considered a debt collector under the FDCPA, for some purposes.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that MCM acted as a debt collector with respect to Plaintiff, because they are without knowledge or information sufficient to form a belief as to the purpose of Plaintiff's debts.**

28.    Defendant MCM is a licensee under the ICAA.

**RESPONSE:  Admitted.**

**Encore**

29.    MCM and Midland Funding are under common ownership.  Both  are subsidiaries of Encore, a publicly traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

**RESPONSE:  Defendants admit the allegations in this paragraph.**

30.    Encore describes itself as "a leading accounts receivable management firm" and a "purchaser and manager of charged-off consumer receivables portfolios." (Form 8-K filed by Encore with the SEC on March 3, 2005).

**RESPONSE:  Defendants admit solely that Plaintiff purports to cite to a portion of a Form**

**8-K filed by Encore with the SEC.  Defendants deny the allegations in this paragraph to the**

**extent that they are contrary to or inconsistent with the statements in the Encore 8-K.**

31.    On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios."  (Form 8-K filed by Encore with the SEC on March 10, 2005).

**RESPONSE:  Defendants admit solely that Plaintiff purports to cite to a portion of a Form**

**8-K filed by Encore with the SEC.  Defendants deny the allegations in this paragraph to the**

**extent that they are contrary to or inconsistent with the statements in the Encore 8-K.**

32.    Encore "acquires its receivable portfolios at deep discounts from their face values using its proprietary valuation process that is based on the consumer attributes of the underlying accounts."  (Form 10-K filed by Encore with the SEC for the year ending December 31, 2006, original p. E).  By "deep discount" is meant 3.0 to 3.36% of face value.  (*Id.,* original p. 28).

**RESPONSE:  Defendants deny the allegations in this Paragraph to the extent that they are**

**contrary to or inconsistent with the statements in the 10-K Encore filed in 2007 for the year**

**ending December 31, 2006.**

33.    Encore states that it is responsible for developing collection strategies.  Thus, on March 3, 2005, Encore stated to public investors that:

> Our fourth quarter performance capped a very strong year for Encore, as we generated record levels of collections, revenues, and earnings per share….We were able to achieve this strong growth despite scaling back on our purchasing of new portfolios throughout much of 2004 in response to less attractive pricing in the marketplace.  Total purchases during 2004 were $103.4 million compared to $89.8 million in 2003.  We continue to effectively develop alternative collection channels, such as legal and agency outsourcing, which increase our ability to penetrate our portfolios further….

The statement was made by Carl C. Gregory, III, the-Vice Chairman and CEO of Encore Capital Group, Inc. (Form 8-K filed by Encore with the SEC on March 3, 2005).

**RESPONSE:  Defendants admit solely that Plaintiff purports to cite to a portion of a Form**

**8-K filed by Encore with the SEC.  Defendants deny the allegations in this paragraph to the**

**extent that they are contrary to or inconsistent with the statements in the Encore 8-K.**

34.    Encore is also responsible for raising money to purchase the charged-off debts.

**RESPONSE:  Denied as stated.  Encore admits only that it does obtain funds, some of which  are ultimately used to purchase charged-off debts.**

35.    Encore has various subsidiaries, such as Midland Funding LLC, take title to the debts it purchases.

**RESPONSE:  Denied as stated.  Defendants admit only that Midland Funding takes title to the debt that Midland Funding purchases.**

36.    On March 3, 2005, Encore CEO Gregory stated in an earnings conference call:

It's notable that we achieved this strong growth despite scaling back on our purchases of new portfolios for the better part of 2004, because of a less attractive pricing environment.  As we have mentioned many times, one of our competitive advantages is our varied business model that makes use of several different collection channels. During the fourth quarter we continue to see increased production out of our legal channel and our contingent agency outsourcing channel, which was developed earlier in 2004.  For the full year, our collections through alternative channels, with the exception of the sales channel, more than doubled.

Turning to the purchasing market, our purchases for the firs three quarters of the year were relatively modest, because of what we deemed to be a lack of opportunities that met our high standards.  The market continues to be highly competitive, and it's looking like it could remain that way for quite a while.  Accordingly, we have adjusted our strategy to reflect the current environment.  We determined that we should not bypass profitable opportunities simply because they could not generate the high level of returns we have typically demanded, there are sufficient opportunities to purchase portfolios that can be nicely profitable for the Company.  And in the current environment, it's in our best interest to acquire these portfolios rather than waiting for prices to come down.

With that being said, we invested $46.1 million in new portfolios in the fourth quarter, at an average purchase price of 3.86 percent of face value.  Almost all of these purchases were credit card portfolios and that's where we found the most attractive opportunities in the fourth quarter.  These purchases were made with our former credit facility that expired at the end of the year.  We were able to modify the terms of that credit facility that expired at the end of the year.  We were able to modify the terms of that credit facility during the fourth quarter, to put a ceiling on the total interest that we will have to pay on these portfolios.  The lower interest expense associated with these portfolios will help offset the higher prices, and the resulting lower collection multiples and enable these portfolios to still generate nice profits for the Company.

**RESPONSE:  Defendants admit that the Plaintiff purports to cite to certain statements attributed to Encore CEO Gregory on a March 3, 2005 conference call.  Defendants deny that the allegations contained in paragraph 36 represent a true and correct version of the statements made by Encore CEO Gregory.**

37.    On August 3, 2004, Encore CEO Gregory stated in another earnings call:

We believe our business model is especially well-suited to this changing environment. Specifically, our business model emphasizes customer-level rather than portfolio-level analytics, innovative and flexible collection processes and conservative accounting.

The keystone to everything we do is customer-level analytics – understanding the individual customer and his changing ability to pay.  Prior to purchase and throughout our ownership, we analyze the individual customer's ability and willingness to pay.  We are always asking the same question – can this particular customer pay us all or some of what he owes now?  By focusing on the customer and information about him, we are able to move comfortably across various asset types as well as the portfolio ages or time since charge-off.  In this process, a score is generated for every single account we own and the score is refreshed quarterly to ensure that it maintains its accuracy.

The second major aspect of our business model is our use of innovative collection strategies that are driven by the underlying collectibility score of each customer.  In other words, to fully benefit from the new information we are generating about the individual customers, we have to be able to apply different collection strategies as appropriate, or at least be able to apply the traditional approaches in new ways that will be more effective.

We now have eight unique revenue channels that each contribute more than $1 million per month in collections, including direct mail, balance transfer, external legal, and our recently developed agency outsourcing strategy.

**RESPONSE:  Defendants admit that Plaintiff purports to cite to certain statements attributed to Encore CEO Gregory on an August 3, 2004 conference call. Defendants deny that the allegations contained in paragraph 37 represent a true and correct version of the statements made by Encore CEO Gregory.**

38.    Encore's involvement in the collection process is such as to make it a "debt collector" as defined in the FDCPA.

**RESPONSE:  Denied.**

39.    Defendants herein are under common control as well as ownership, with common or overlapping officers and directors.  For example, J. Brandon Black is president and CEO of MCM, CEO of Encore and president of MRC.

**RESPONSE:  Denied as stated.  Encore is the parent and a shareholder of Midland Funding and MCM.  The Defendants do not all have the identical composition of officers and directors.**

### FACTS RELATING TO PLAINTIFF

40.    On or about January 25, 2008, a lawsuit was filed in the name of Midland Funding LLC against plaintiff Kimberly A. Borman in the Circuit Court of McHenry County to collect a purported debt incurred for personal, family or household purposes.  Midland Funding LLC claimed to be "the successor in interest of said account … having purchased said account in the regular course of business in good faith and for value."

**RESPONSE:  Defendants admit only that Plaintiff purports to quote a portion of a complaint filed by Midland Funding in the Circuit Court of McHenry County.  The complete complaint speaks for itself.  Defendants deny the remaining allegations in paragraph 40.**

41.    On information and belief MCM directed the filing of the lawsuit.

**RESPONSE:  Denied.**

42.    The complaint did not attach any sort of assignment.

**RESPONSE:  Admitted.**

43.    On information and belief, Midland Funding LLC did not have an assignment that complied with § 8b of the Collection Agency Act.

**RESPONSE:  The allegations of paragraph 43 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 43.**

44.    Midland Funding LLC therefore did not have any sort of valid claim.

**RESPONSE:  The allegations of paragraph 44 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 44.**

45.    Defendants knew or should have known that it did not have a valid claim.

**RESPONSE:  The allegations of paragraph 45 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 45.**

46.    Defendant Encore devised and implemented the "strategy" of procuring debts that were so cheap that the requisite documentation was not available and filing suit on them.

**RESPONSE:  Denied.**

## FACTS – GENERAL

47.    Lawsuits are regularly filed in the name of defendant Midland Funding LLC on debts it claims to have purchased without having an assignment that complies with § 8b of the Collection Agency Act, and therefore, without a valid claim.

**RESPONSE:  The allegations of paragraph 47 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 47.**

48.    Defendants know or should know the claims are not valid, but file suit anyway because consumers are unlikely to realize the fact.

**RESPONSE:  Denied.**

49.    On information and belief, based on a computer search of court records, more than 1,000 such lawsuits have been filed in the name of Midland Funding LLC.

**RESPONSE:  Defendants lack information or knowledge sufficient to form a belief as to the truth of this allegation.**

## CLASS ALLEGATIONS

50.    Plaintiff brings this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).  The class consists of (a) all individuals (b) against whom a collection lawsuit was filed

(c) in Illinois (d) in the name of Midland Funding LLC (e) subsequent to January 1, 2008, (f) without attaching to the complaint an assignment that complied with § 8b of the ICAA.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 50.**

51.    The class is so numerous that joinder of all members is not practicable.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 51.**

52.    On information and belief, there are at least 40 all individuals against whom a collection lawsuit in Illinois in the name of Midland Funding LLC subsequent to January 1, 2008, without attaching to the complaint an assignment that complied with § 8b of the ICAA,.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 52.**

53.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

   a.    Whether defendant engages in a practice of filing lawsuits without attaching to the complaint an assignment that complied with § 8b of the ICAA.

   b.    Whether such lawsuits are therefore subject to a defense of which defendant knows or should know about.

   c.    Whether such practice is an [sic] unfair or deceptive.

   d.    Whether defendant violates the ICAA.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 53.**

54.    Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 54.**

55.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 55.**

56.    A class action is superior for the fair and efficient adjudication of this matter, in that:

a.    Individual actions are not economically feasible.

b.    Members of the class are likely to be unaware of their rights;

c.    Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 56.**

### COUNT I – FAIR DEBT COLLECTION PRACTICES ACT

57.    Plaintiff incorporates paragraphs 1-56

**RESPONSE:  Defendants incorporate their responses to Paragraphs 1-56.**

58.    This claim is against all defendants.

**RESPONSE:   Defendants admit that Plaintiff purports to bring this claim against all Defendants.**

59.    The filing and prosecution of collection lawsuits notwithstanding a known defense, in the hope that the consumer will not raise the defense, is both a deceptive collection practice, in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10), and an unfair collection practice, in violation of 15 U.S.C. § 1692f.

**RESPONSE:  The allegations of paragraph 59 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants admit only that Plaintiff purports to state interpretations of the FDCPA Sections 1692e and 1692f, which speak for themselves.  Defendants deny any implication that Defendants violated the FDCPA.**

60.    Since Kimber v. Federal Financial Corp., 668 F. Supp. 1480, 1488 (M.D. Ala. 1987), "bringing a lawsuit to which there appears to exist a complete defense" in the hope that the consumer will not realize it exists and will default or pay has been a violation of the FDCPA.

**RESPONSE:** The allegations of paragraph 60 set forth conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants state that the case cited speaks for itself. Defendants deny any implication that Defendants violated the FDCPA.

61.    Section 1692e provides:

> **§ 1692e.    False or misleading representations [Section 807 of P.L.]**
>
> A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> **(2)    The false representation of - -**
>
> > **(A)    the character, amount, or legal status of any debt; . . .**
>
> **(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken . . . .**
>
> **(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer . . . .**

**RESPONSE:** The allegations of paragraph 61 set forth conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants admit only that Plaintiff purports to state portions of the FDCPA, which speaks for itself. Defendants deny any implication that Defendants violated the FDCPA.

62.    Section 1692f provides:

> **§ 1692f.    Unfair practices [Section 808 of P.L.]**
>
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt . . .

**RESPONSE:** The allegations of paragraph 62 set forth conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants admit

only that Plaintiff purports to state portions of the FDCPA, which speaks for itself. Defendants deny any implication that Defendants violated the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

(1)     Statutory damages;

(2)     Actual damages;

(3)     Attorney's fees, litigation expenses and costs of suit;

(4)     Such other and further relief as the Court deems proper.

**RESPONSE:  Denied.**

WHEREFORE, Defendants respectfully request judgment in their favor and against Plaintiff on all claims asserted by Plaintiff and for such other relief as the Court deems just and proper.

## COUNT II – ILLINOIS COLLECTION AGENCY ACT

63.     Plaintiff incorporates paragraphs 1-56.

**RESPONSE:  Defendants incorporate their responses to Paragraphs 1-62.**

64.     This claim is against Midland Funding LLC and MCM.

**RESPONSE:  Defendants admit that Plaintiff purports to bring this claim against Midland Funding and MCM.**

65.     MCM is a licensee under the ICAA.

**RESPONSE:  Admitted.**

66.     Defendant Midland Funding LLC is a "collection agency" as defined in the ICAA.

**RESPONSE:   The allegations of paragraph 66 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 66.**

67.    Section 425/3(d), as amended effective Jan. 1, 2008, brings debt buyers within its purview by providing that "[a ]person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it. . . [b]uys accounts, bills or other indebtedness and engages in collecting the same."    Previously coverage was limited to a person who "buys accounts, bills or other indebtedness with recourse and engages in collecting the same".    By deleting "with recourse," the legislature intended to classify as a "collection agency" persons such as the defendant who buy charged-off debts for their own account.

**RESPONSE:    The allegations of paragraph 67 set forth conclusions of law to which no response is required.    To the extent that a response is deemed required, Defendants admit only that Plaintiff purports to state portions of the ICAA, which speaks for itself. Defendants deny the remaining allegations in paragraph 67.**

68.    Defendant Midland Funding LLC violated 225 ILCS 425/8b by filing suit without an assignment in the form specified therein.

**RESPONSE:    The allegations of paragraph 68 set forth conclusions of law to which no response is required.    To the extent that a response is deemed required, Defendants deny the allegations of paragraph 68.**

69.    Defendant MCM violated 225 ILCS 425/8b by causing Midland Funding LLC to file suit without an assignment in the form specified therein.

**RESPONSE:    The allegations of paragraph 69 set forth conclusions of law to which no response is required.    To the extent that a response is deemed required, Defendants deny the allegations of paragraph 69.**

70.    Defendants violated the following provisions of 225 ILCS 425/9:

**. . . (20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. . . .**

**RESPONSE:    The allegations of paragraph 70 set forth conclusions of law to which no response is required.    To the extent that a response is deemed required, Defendants deny the allegations of paragraph 70.**

71.    A private right of action exists for violation of the ICAA.    Sherman v. Field Clinic, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

**RESPONSE:  The allegations of paragraph 71 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 71.**

72.    Plaintiff and the members of the class were damaged as a result.

**RESPONSE:  The allegations of paragraph 72 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 72.**

WHEREFORE, plaintiff requests that the Court grant the following relief in favor of plaintiff and the class and against defendant:

a.    Compensatory, punitive and nominal damages;

b.    Costs.

c.    Such other and further relief as is appropriate.

**RESPONSE:  Denied.**

WHEREFORE, Defendants respectfully request judgment in their favor and against Plaintiff on all claims asserted by Plaintiff and for such other relief as the Court deems just and proper.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

73.    Plaintiff incorporates paragraphs 1-56.

**RESPONSE:  Defendants incorporate their responses to Paragraphs 1-72.**

74.    This claim is against all defendants.

**RESPONSE:  Defendants admit that Plaintiff purports to bring this claim against all Defendants.**

75.    Defendants' conduct as set forth above constitutes both unfair and deceptive acts and practices, in violation of § 2 of Illinois Consumer Fraud Act, 815 ILCS 505/2.

**RESPONSE:  The allegations of paragraph 75 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 75.**

76.    Defendants engaged in such conduct in the course of trade and commerce.

**RESPONSE:  The allegations of paragraph 76 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 76.**

77.    Defendants engaged in such conduct for the purpose of obtaining money from plaintiff and others.

**RESPONSE:  The allegations of paragraph 77 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 77.**

78.    Plaintiff and the members of the class were damages as a result.

**RESPONSE:  The allegations of paragraph 78 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations of paragraph 78.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

a.    Actual damages;

b.    Punitive damages;

c.    An injunction against further violations;

d.    Attorney's fees, litigation expenses and costs of suit;

e.    Such other or further relief as the Court deems proper.

**RESPONSE:  Denied.**

WHEREFORE, Defendants respectfully request judgment in their favor and against Plaintiff on all claims asserted by Plaintiff and for such other relief as the Court deems just and proper.

### AFFIRMATIVE DEFENSES

Further answering the Complaint, and as additional defenses thereto, Defendants incorporate by reference the foregoing answers and affirmative defenses as though fully set forth herein, without assuming the burden of proof where such burden is otherwise on Plaintiff as a matter of applicable substantive procedural law, and further allege as follows:

### FIRST DEFENSE

1.      MCM is not liable for a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), because any violation, which MCM denies occurred, was not intentional and would have resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid such error pursuant to 15 U.S.C. § 1692k(c).

### SECOND DEFENSE

2.      Plaintiff fails to state a cause of action under the FDCPA, because Defendants Midland Funding and Encore did not engage in any debt collection activities relating to the allegations in Plaintiff's Complaint and are not debt collectors as defined by the FDCPA.

### THIRD DEFENSE

3.      Assuming Defendants Midland Funding and Encore's alleged acts or omissions violated the FDCPA and said Defendants are found to be debt collectors as defined by the FDCPA, all of which said Defendants deny, any violation of the FDCPA was not intentional and would have resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid such error pursuant to 15 U.S.C. § 1692k(c).

## FOURTH DEFENSE

4.     Plaintiff does not have a private cause of action for her claims in this case under the Illinois Collection Agency Act, 225 ILCS 425/1, *et seq*.

## FIFTH DEFENSE

5.     Plaintiff does not have a private cause of action for her claims in this case under the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq*.

## SIXTH DEFENSE

6.     Plaintiff's claims relating to statements made or actions taken in the state court proceeding at issue are subject to the litigation privilege and/or witness immunity doctrine.

## SEVENTH DEFENSE

7.     To the extent that Plaintiff seeks excessive punitive damages, and/or the retroactive application of § 8b of the ICAA, such claims are barred by the Due Process Clause of the United States Constitution.

## EIGHTH DEFENSE

8.     To the extent that Plaintiff's allegations in the Complaint regarding Illinois state court lawsuits relate to issues already litigated, adjudicated and/or which could have been raised, Plaintiff is barred by the doctrines of *res judicata* and/or collateral estoppel from trying to re-litigate such issues.

## NINTH DEFENSE

9.     To the extent that Plaintiff's Complaint seeks relief from Illinois state court judgments or sets forth allegations inextricably intertwined with such judgments and cases that were first filed and pending in Illinois state courts, the Court should abstain on the basis of the *Colorado River* and/or *Rooker-Feldman* doctrine(s).

**TENTH DEFENSE**

10.     Plaintiff's claims must be denied, in whole or in part, to the extent that the ICAA unduly burdens interstate commerce, thereby violating Article I, § 8 of the U.S. Constitution.

WHEREFORE, Defendants respectfully request judgment in their favor and against Plaintiff on all claims asserted by Plaintiff and for such other relief as the Court deems just and proper.

Dated:  July 14, 2008                              Respectfully submitted,

                                                            **MIDLAND FUNDING LLC, MIDLAND
                                                            CREDIT MANAGEMENT, INC., and
                                                            ENCORE CAPITAL GROUP, INC.**

                                        By: s/ Theodore W. Seitz
                                                James McConkey (jmcconkey@dykema.com
                                                Theodore W. Seitz (tseitz@dykema.com)
                                                Dykema Gossett, PLLC
                                                10 South Wacker Drive, Suite 2300
                                                Chicago, Illinois 60606
                                                Phone: 312-876-1700
                                                Fax:    312-627-2302

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **July 14, 2008,** I electronically filed the foregoing **Answer and Affirmative Defenses to Complaint** with the Clerk of the Court using the ECF system, which sent notification to the following:

> Daniel A. Edelman (courtecl@edcombs.com)
> Cathleen M. Combs (ccombs@edcombs.com)
> James O. Latturner (jlatturner@edcombs.com)
> Cassandra P. Miller (cmiller@edcombs.com)

s/ Irina V. Frye

LAN01\190498.1
ID\TWS